# Exhibit “D”

**1.8.5.35 Residence/name/personnel data**

Officers shall reside in the Commonwealth of Pennsylvania within fifteen (15) air miles of any jurisdictional boundary line serviced by the Department. New officers shall comply within 12 months of their appointment. Change of name or other personnel information such as telephone number, marital status, number of children, military service, language skills, licenses, education or training, etc. are important to the effective administration of the department. Therefore, any change of residency, name and/or personnel data shall be reported immediately on NYCRPD form 1.

Reference General Order 1.7.1 Procedures to Follow Relating to Change of Address, Phone Number or Status.

**1.8.5.36 Interference**

Officers shall not interfere with cases being handled by other officers of the Department or by any other government agency unless:

- Ordered to do so by a superior officer, or
- The intervening officer believes beyond a reasonable doubt that a manifest injustice would result from failure to take immediate action.

Officers shall not undertake any investigation or other official action not part of their regular duties without obtaining permission from their superior officer unless the exigencies of the situation require immediate police action.

Reference General Order 1.8.4 Procedures and Reporting Requirements for Duty to Intervene

**1.8.5.37 Possession and use of drugs**

Officers shall not possess or use any controlled substances, narcotics or hallucinogens except when prescribed in the treatment of officers by a physician, or dentist. When prescribed, officers shall notify the Chief of Police immediately. In accordance with MPOETC Certification requirements, **Officers are prohibited from obtaining Medical Marihuana Cards and/or possessing or using Medical Marihuana.**

Reference General Order 4.9.1 Municipal Police Officers Education and Training Commission Certification Requirements and Supporting MPOETC Certification Documents/Agency Identification Credentials.

**1.8.5.38 Abuse of process**

Officers shall not make false accusations of a criminal or traffic charge.

**1.8.5.39 Financial disclosure**

Upon the order of the Chief or the Chief's designee, officers shall submit financial disclosure statements in accordance with department procedures in connection with a complaint in which this information is material to the investigation.

Reference General Order 2.3.0 Procedures to Follow Relating to Internal Investigations Against Agency Members.

**1.8.5.40 Conformance to laws**

Any officer shall obey all laws of the United States and any state and local jurisdiction in which the officers are present. A conviction of the violation of any law shall be prima facie evidence of a violation of this section. Officers shall report any new charges (including traffic offenses) to the Chief of Police.

**1.8.5.41 Abuse of position**

Use of Official Position or Identification - officers shall not use their official position, official identification cards or badges for personal or financial gain, for obtaining privileges not otherwise available to them except in the performance of duty or for avoiding consequences of illegal acts.

Officers shall not lend to another person their identification cards or badges or permit them to be photographed or reproduced without the approval of the Chief.

Use of Name, Photograph or Title - Officers shall not authorize the use of their names, photographs, or official titles which identify them as officers, in connection with testimonials or advertisements of any commodity or commercial enterprise, without the approval of the Chief.

**1.8.5.42 Identification**

Officers shall carry their badges and identification cards on their persons at all times, except when impractical or dangerous to their safety or to an investigation.

They shall furnish their name and identification number to any person requesting that information, when they are on duty or while holding themselves out as having an official capacity, except when the withholding of such information is necessary for the performance of police duties or is authorized by proper authority.

Reference General Order 4.9.1 Municipal Police Officers Education and Training Commission Certification Requirements and Supporting MPOETC Certification Documents/Agency Identification Credentials.

**1.8.5.43 Courtesy**

Officers shall be courteous to the public. Officers shall be tactful in the performance of their duties, shall control their tempers, and exercise the utmost patience and discretion and shall not engage in argumentative discussions even in the face of extreme provocation. In the performance of their duties, officers shall not use coarse, violent, profane or insolent language or gestures and shall not express any prejudice concerning race, religion, politics, national origin, lifestyle or similar personal characteristics.

**1.8.5.44 Requests for assistance**

When any person applies for assistance, or advice, or makes complaints or reports, either by telephone or in person, all pertinent information will be obtained in an official and courteous manner and will be properly and judiciously acted upon consistent with established departmental procedures.

Reference General Order 3.4.1 Procedures to Follow for Field Reporting and Records Management.

**1.8.5.45 Response to calls**

Officers shall respond to all calls for service in a prompt and professional manner. Calls shall be handled in person unless circumstances prevent an in-person response. Supervisors shall be made aware of calls not handled in person.

Reference General Orders 2.1.1 Procedures for Operation of Police Vehicles and 3.4.1 Procedures to Follow for Field Reporting and Records Management.

**1.8.5.46 Reporting of calls**

All Calls for service and complaints shall be recorded in the records management system by creating the appropriate report (Operations, Incident or Investigative).

In ALL cases, a daily log entry is required by the officer responding to a Complaint.

**1.8.5.47 Dissemination of information**

Officers shall treat the official business of the Department as confidential. Information regarding official business shall be disseminated only to those for whom it is intended, in accordance with established departmental procedures. Officers may remove or copy official records or reports from headquarters only in accordance with established department procedures. Officers shall not divulge the identity of persons giving confidential information except as authorized by proper authority.

**1.8.5.48 Processing property and evidence**

Property or evidence which has been discovered, gathered or received in connection with departmental responsibilities will be processed in accordance with established departmental procedures and general orders. Officers shall not convert to their own use, manufacture, conceal, falsify, destroy, remove, tamper with or withhold any property or evidence in connection with an investigation or other police action, except in accordance with established department procedures.

Reference General Order 3.5.2 Procedures to Follow for Evidence or Property Collection and Preservation.

**1.8.5.49 Political activity**

Given the power vested in police officers, the Department views the officers as individuals, who through exercise of that power, effectively make limited policy decisions in the course of exercising that authority in the field. Control over that individual policy making power, as it may be influenced by individual political views is essential. Reasonable restrictions on the active partisan political conduct of officers are necessary in order to:

1. Preserve loyalty to the administration;
2. Preserve sound, consistent personnel administrative policy generally;
3. Maintain effective discipline;
4. Maintain integrity and efficiency within the Department;
5. Avoid patronage in employment practices;
6. Avoid abuse of police authority for partisan political purposes; and
7. Avoid politically prejudiced administration of our laws.

A. Officers (in an off-duty status) shall be permitted to:

1. Register and vote in any election;
2. Express opinions as individuals privately and publicly on political issues and candidates;
3. Attend political conventions, rallies, fund-raising functions and similar political gatherings;
4. Actively engage in any non-partisan political functions;
5. Sign political petitions as individuals;
6. Place election signs on their personal real estate;
7. Make financial contributions to political organizations;
8. Serve as election judges or clerks or in a similar position to perform non-partisan duties as prescribed by state or local laws;
9. Hold membership in a political party and participate in its functions to the extent consistent with this section;
10. Otherwise participate fully in public affairs except as provided by law, to the extent that such endeavors do not impair the neutral and efficient performance of official duties or create real or apparent conflicts of interest.

B. Officers (on and off duty) are prohibited from the following conduct:

1. Using their official capacity to influence, interfere with or affect the results of an election;
2. Assuming active roles in the management, organization, or financial activities of partisan political clubs, campaigns or parties;
3. Serving as officers of partisan political parties or clubs;
4. Becoming candidates for or campaigning for a partisan elective office;
5. Soliciting votes in support of, or in opposition to, any partisan candidates;
6. Serving as delegates to a political party convention;
7. Endorsing or opposing a partisan candidate for public office in a political advertisement, broadcast, or campaign literature;
8. Initiating or circulating a partisan nominating petition;
9. Organizing, selling tickets to, or actively participating in a fund-raising function for a partisan political party or candidate;
10. Addressing political gatherings in support of, or in opposition to a partisan candidate;
11. Otherwise engaging in prohibited partisan activities;
12. Holding an elective office secured principally through partisan political activity.

C. The regulations listed above are not intended to be inclusive, but merely descriptive and shall be subject to addition, modification and interpretation by

the Administration in keeping with its policy statement in the discretion of the Chief of Police.

D. An officer or officers wishing to pursue the prohibited conduct of Subsection B shall first resign his/her commission and terminate his/her employment with the Department. Failure to do so shall entitle the Chief of Police to immediately terminate the offending officer or officers.

**1.8.5.50 Interviews and statements to outside agencies**

If at any time an officer is contacted by an outside agency and requested to provide a statement or interview in reference to the officers conduct, whether on duty or off duty, the officer will notify the Chief of Police.

Officers will advise the requesting agency to contact the Chief of Police to arrange the proper time and place for the statement or interview to be given.

**1.8.5.51 Communication with board members**

All communications for the Board of Commissioners shall emanate through the Chief of Police; members shall NOT correspond directly to the Board unless directed to do so by the Chief or the Board.

**1.8.5.52 Radio and CAD communications**

Officers shall maintain a constant way of communicating with the 911 Center. When leaving the police car, the dispatcher will be notified, and the officer will have a portable radio at his access. If unable to meet these conditions the supervisor shall be notified.

All radio and CAD messages will be consistent with department guidelines and general orders. No profane language or messages shall be transmitted by the officer.

**1.8.5.53 Enforcement Actions**

All enforcement actions under this general order shall follow the guidelines and procedures established under General Order 2.3.0 Procedures to Follow Relating to Internal Investigations Against Agency Members

IV. Effective February 21, 2022

**By Order of**

**David L. Lash**
**Chief of Police**

**Pennsylvania Law Enforcement Accreditation Program**

# ANNUAL COMPLIANCE SURVEY FOR ACCREDITED AGENCIES

Ongoing file maintenance is a critical part of the accreditation process. The Pennsylvania Law Enforcement Accreditation Commission requires annual reports on accreditation activities from each accredited agency. The annual report form will be provided to you by program staff. Program staff should receive these reports within 30 days of your accreditation anniversary date. If the report is not received within that 30 day period, the agency chief will be contacted by program staff and made aware of the problem. Staff will work closely with the agency chief to correct any misunderstandings to insure that the report is completed and forwarded to staff in a timely manner. If the report is not received within 30 days past the anniversary date, the Commission will be notified and a letter will be sent advising the chief of the agency and the appropriate governmental representative that if the report is not received within 30 days of the letter date, the Commission will take action to decertify the agency at its next meeting.

Any accredited agency that is unable to maintain full compliance with any of the program standards shall notify program staff within 30 days. Agency officials who have questions about standard compliance or program requirements are also expected to contact program staff. If the issues cannot be resolved by phone or through the mail, the agency's chief executive officer can request an on-site review of folders and records by program staff to help resolve any problems.

The Accreditation Commission may require chief executive officers of accredited agencies to submit documentation that clearly demonstrates the agencies' ongoing compliance with selected standards. Should the review of these selected files indicate that the agency is out of compliance, program staff will offer to meet with appropriate staff members to discuss the agencies' maintenance activities.

Agency Name: Northern York County Regional Police Department

Date of Accreditation: 05.12.2022

Date of Re-Accreditation: 05.12.2025

Annual Report No.: 02

Report Due on: 04.12.2024

**1**. What is the role of the chief executive officer in monitoring compliance with program standards at your agency? Please describe those steps that the CEO takes to ensure that officers are following procedures required for accreditation and that appropriate records are being added to program files to keep them up-to-date.

The Department is currently using PowerDMS (PowerPolicy, PowerTime and PowerReady) for accreditation purposes. The Chief monitors the Assessment and confirms that files and documents are being uploaded in a timely manner. The Accreditation Manager reviews reports, logs, and numerous files daily checking for compliance. If problems are located they are immediately brought to the attention of the Chief and addressed accordingly. The Chief also reviews patrol logs, morning reports, case reports, inquiry reports and other departmental files to verify compliance. This year the department started using PowerReady for the FTO Program and all related documents are completed in this system. PowerReady also acts as a Early Warning System for potential problematic conduct tracking discipline, use of force, accidents, pursuits and other areas of concern. The Chief has final review of all documents in this system.

**2**. Please describe any formal role that other senior staff or supervisory personnel have in ensuring that the agency is complying with all program requirements. Be sure to specify how often these individuals meet to review program requirements.

The Accreditation Manager meets frequently with the Administrative Lieutenant (Neidigh) concerning departmental training and police facility related items. Also, weekly meetings are held with the Operations Lieutenant (Anderson) and the Special Operations Lieutenant (Migatulski) to verify their assigned areas are complying with accreditation standards.

The Department also holds semiannual staff meetings with all supervisory personnel where issues of concern or compliance are discussed with members.

**3**. Is your agency accreditation manager the same person who had this role when your agency was accredited and/or when it last submitted an annual compliance survey?

Yes ☑ No ☐ If no, please provide the name and rank of the current accreditation manager.

N/A

**4**. Please describe the activities of the agency accreditation manager and, if applicable, other support personnel who are responsible for maintaining the Accreditation Program files. Please describe the steps that the individual takes to ensure that the agency can demonstrate ongoing compliance with applicable standards and how often the files are updated with supporting documentation.

The Department has assigned a full time commissioned officer as the Accreditation Manager and a full time civilian as an assistant for accreditation. The Accreditation Manager reviews all incoming reports, case files, charges, search warrants, evidence collection, patrol logs, training records, and several other departmental reports. Daily monitoring is also conducted on all missing person reports, pursuit administrative reviews, use of force reports, vehicle impound reports, Sexual Assault Kit Collection Logs, ChildLine Notification Reports, Arrest Warrants and Protection From Abuse Orders. All reports are checked for compliance with current standards. When updated documents are reviewed that show particular compliance with a standard they are added to the assessment on PowerDMS. The Manager also maintains a proof check list in addition to PowerDMS showing the date the proof was collected. The Manager also maintains charts to track all the required training for the assessment period. The PowerReady System is also monitored for FTO Training/Evaluation, Officer/Supervisor Evaluation and as a Early Warning System for potential problematic conduct.

**5**. The Accreditation Commission strongly recommends that accredited agencies conduct an annual audit 30 days prior to completing this survey to ensure that all files are complete and up-to-date. Please indicate whether or not your agency has done such an audit. If so, briefly summarize the results. Also describe any other activities that your agency conducts to monitor and enforce compliance with applicable standards.

An annual audit was conducted to ensure that all files are complete and up to date before the conclusion of the assessment period. During the audit several standards were marked Non Occurrence after a final search for proofs of compliance yielded no results. Several up to date proofs of compliance were located during the audit and added to the assessment.

The Accreditation Manager and his assistant regularly reviews reports and departmental documents to monitor and enforce compliance with standards. Supervisors also review reports and activities for personnel under their span of control to ensure compliance with PLEAC Standards.

**6**. The Accreditation Commission has adopted a policy that requests accredited agencies to report incidents of non-compliance to program staff within 30 days of the date that the agency is no longer in compliance. Please describe any procedures that you have established to ensure that this request would be met in a timely manner in the event that it should ever become necessary.

The Chief of Police, Accreditation Manager and Command Staff continuously monitor incidents to ensure compliance with current standards. If the department would become aware of non-compliance with any standard supervisory staff would formulate an action plan to remedy the problem. The issue would also be reported directly to the Chief of Police. The Accreditation Manager would then notify the Accreditation Commission within 30 days of the issue.

**7**. Is your agency currently in full compliance with all applicable standards?

Yes ☑ No ☐ If no, please provide the following information for each standard that the agency is not fully implementing:

a. The standard number;
b. Reason (s) for non-compliance;
c. The length of time for which the agency has not been in compliance; and
d. A plan and timetable for re-establishing compliance.

N/A

**8**. Have there been any instances during the past 12 months when you feel that your agency may not have been in full compliance with an applicable standard? If so, please describe the circumstances and indicate whether or not the agency is currently in compliance.

N/A

**9**. Do program files for every applicable standard include documentation which demonstrates that the agency has been in full compliance during the preceding 12 months except where indicated above? If not, do the files clearly indicate where appropriate documentation is stored or available for review?

Yes ☑ No ☐ If no, please explain.

N/A

**10**. Were there any developments during the past 12 months that had a substantial impact on the way in which your agency implemented program standards (e.g., layoffs, budget cuts, a major internal reorganization, etc.)? If so, please describe and indicate how it affected the way that your agency complied with applicable standards.

The agency had no developments during the last twelve months which had a substantial impact on the way any standards were implemented.

**11**. During the past 12 months, has your agency rewritten policies or procedures in a way that have significantly changed the manner in which you are complying with a program standard?

During the past twelve months no general orders, policies or procedures were rewritten or revised in a way that significantly changed the manner in which the agency complied with any program standard.

**12**. During the past 12 months, has your agency initiated any new services that fall within the scope of standards that were previously considered to be not applicable?

Yes ☐ No ☑ If yes, please describe and attach a copy of the policy that would bring your agency into compliance.

N/A

**13**. During the past 12 months, has your agency stopped using any resources (e.g., specialized vehicles) or providing certain services (e.g., polygraph tests) that would make a previously applicable standard not applicable?

No / N/A

**14**. Is there any other information pertaining to your agency's compliance with program standards that you would like to bring to the attention of the Accreditation Commission?

This is the second year that the department has been accredited. The agency has adopted more up to date policies and procedures in order to comply with the current program standards. The program also causes the department to continuously review policies ensuring that they are up to date and current. This has helped provide a more professional service to the municipalities and residents we serve.

**15**. Is your municipality self-insured?

Yes ☐ No ☑ If no, please indicate the name of your insurance carrier and whether there has been any reduction in your agency's liability insurance premiums during the last year as a result of being accredited. Where applicable, indicate how much money you saved.

The Departments Police and Public Safety Officials Liability Insurance is through Pennsylvania Insurance Risk Management Association (PIRMA). Accreditation has reduced the insurance premiums by about nine thousand dollars (9,000.00).

**16**. Please describe any instances in which your status as an accredited agency was a positive factor in dealing with the community or with lawsuits that attorneys either filed or were thinking about filing against your agency.

The accreditation program has helped improve the quality of services across the agency by identifying strengths and/or weaknesses. It has improved citizen contacts and outcomes by having up to date standards, policies and procedures. This has decreased risks and liability cases for the department.

**17.** Has this report been reviewed by the CEO of the agency?

Yes ☑ No ☐

Survey Prepared By:

Sergeant Christopher Irwin

Date: 04.05.2024